# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| CHRISTOPHER RYAN KING and ) | Case No. 05-32198 |
| JENI LEE KING, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| AUTOMOTIVE FINANCE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Adversary No. 05-3061 |
| CHRISTOPHER RYAN KING, JENI LEE ) | |
| KING, AND BANK OF AMERICA, N.A., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Bank of America's motion to dismiss for lack of subject matter jurisdiction. On April 26, 2006, the Court held a hearing on Bank of America's motion at which time Bank of America offered arguments in support and Automotive Finance Corp. ("AFC ") offered arguments against the motion. Bank of America argues that the Court is without jurisdiction over the claim against Bank of America because the Debtor's bankruptcy estate will not be affected in any way by the resolution of that claim. In response, the Plaintiff argues that the facts giving rise to its claim against Bank of America are so entwined with the facts supporting its claim against the Debtors that the bankruptcy court may exercise "related to" jurisdiction over that claim.

AFC does not dispute that the resolution of its claim will not have an effect on the estate, and Bank of America does not dispute that AFC's claims against the Debtors and Bank of America arise from a common nucleus of facts. Thus, the sole issue the Court must decide is whether the Court may exercise its "related to" jurisdiction over a claim against a non-debtor co-defendant where the facts giving rise to that claim are "entwined with" the facts giving rise to the claim against the debtor, even though the resolution of the claim against the non-debtor party will not have an effect on the bankruptcy estate.

Upon consideration of the pleadings, oral arguments, and relevant law, the Court concludes it does not have jurisdiction over the Plaintiff's claim against Bank of America because resolution of that claim will not have an effect on the bankruptcy estate. Alternatively, the Court finds that there are sufficient grounds to abstain from exercising jurisdiction over the Plaintiff's claim against Bank of America.

**BACKGROUND**

In ruling on a motion to dismiss, the Court accepts as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them.[1] For this motion, the essential facts culled from the Plaintiff's first amended complaint are as follows:

1. On January 8, 2005, Defendant Jeni King d/b/a/ Auto Source applied to do business at the Adesa Auction ("Adesa") in Tulsa. Jeni King provided Adesa with the financial information for Auto Source including that Auto Source had an account with Bank of America ("BOA") at the bank's office in Joplin, Missouri. Jeni King also completed a release for Adesa to obtain bank information from BOA on her account.

2. On January 9, 2005, Adesa sent the release to BOA, but BOA did not reply.

3. On January 14, 2005, Auto Source purchased a vehicle from Adesa for $9,800. BOA honored this check.

4. On or about January 21, Auto Source purchased a second vehicle for Auto Source for $14,000. BOA dishonored this check on February 14, 2005.

5. On or about January 28, 2005, Jeni King appeared at the Adesa auction in Tulsa with her husband, Chris King. Jeni King added Chris King to Auto Source's account as an authorized buyer and seller of cars and a representative authorized to sign checks and drafts on behalf of Auto Source. Chris King then presented more than 30 cars that he wished to purchase on behalf of Auto Source.

6. Before Adesa agreed to the sale of the vehicles, which totaled more than $250,000, Adesa sought assurance that Auto Source had ample resources and credit with BOA. Mike Lodes ("Lodes"), Adesa's comptroller, contacted BOA, and he was told that Auto Source did not have money in its account to cover a transaction in excess of $250,000.

---

[1] *Davis v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 1666, 143 L.Ed.2d 839 (1999).

7.     When Lodes approached Chris King and told him of BOA's report about Auto Source's account, Chris King told him that that wasn't correct and that he would personally contact the vice president of BOA in Joplin and direct the vice president to contact Lodes to confirm that Auto Source did indeed have resources to cover the cost of vehicles, including having an available credit line of $500,000.

8.     Within 30 minutes of his conversation with Chris King, Lodes received a call from a man who represented himself to be a vice president of BOA in Joplin. He said his name was "Tom Owen" and further stated that Auto Source had an available credit line of $500,000. Lodes told the man that he needed the information in writing, and the man promised to send it to him.

9.     Based on the representations from Chris King and "Tom Owens," Adesa released 34 cars to Auto Source, but Lodes retained the titles to the vehicles at Adesa.

10.    On or about February 2, 2005, Auto Source sent a representative to Adesa with checks for approximately 25 of the vehicles purchased at Adesa at the January 28, 2005 auction. Lodes received the checks and thereafter deposited them into Adesa's bank.

11.    On February 3, 2005, Chris King called Lodes asking about the titles for the vehicles. Lodes explained that Adesa was holding the titles until either the checks clear or Adesa received written confirmation that Auto Source had sufficient financial resources at BOA to cover the checks.

12.    After the call from Chris King, Lodes received a one-page fax on BOA letterhead from BOA's fax number stating that Auto Source has a checking account with BOA, is in good standing with the bank, and has an available line of credit of $500,000.00 that is tied to the checking account. The fax was signed, "Tom Owen Vice President"

13.     On February 14, 2005, Adesa received notice that 19 of the checks for vehicles purchased on January 28 by Auto Source had been returned by BOA for lack of sufficient funds.

14.    On or about February 16, 2005, Lodes talked with a BOA employee in Joplin who identified himself as Chris Farris ("Farris"). Farris told Lodes that "Tom Owen" was not a bank employee and that Farris was actually the vice-president of the Joplin branch. Farris did, however, acknowledge that the fax number on the February 3 correspondence from "Tom Owen" was BOA's fax number.

15.    On February 21, 2005, Adesa learned that additional checks for vehicles purchased in January 2005 by Auto Source were dishonored by BOA.

16. On or about February 23, 2005, AFC purchased the debt owed by Auto Source to Adesa in the amount of $261,317.00. Adesa has assigned to AFC all of its causes of action against Jeni King, Auto Source, Christopher King, and BOA.

The amended complaint based on these facts contains five counts. Counts I - IV are directed against the Kings and seek determinations of nondischargeability under various sections of § 523(a). Count V alleges that BOA committed fraud on Adesa, and it is this count that is directed against BOA. Notably, the Plaintiff abandoned the allegation contained in its original complaint that the Debtors and BOA conspired to defraud Adesa.

BOA now seeks dismissal of Count V to the extent it raises claims against BOA.

## DISCUSSION

The Plaintiff concedes that its claim against BOA does not qualify as a core proceeding over which the bankruptcy court would have jurisdiction under 28 U.S.C. § 157(b)(2). Instead, the Plaintiff argues that the bankruptcy court has "related to" jurisdiction over the Plaintiff's claim against BOA.

"Related to" jurisdiction is a term of art with its genesis in the statutory language of 28 U.S.C. § 157(c), which states that the bankruptcy court has jurisdiction over civil proceedings "related to cases under title 11." Despite the apparently broad sweep of §157(c), courts have narrowed the scope of "related to" jurisdiction to encompass only those proceedings that have a "conceivable effect" on the administration of the debtor's estate.[2] More precisely, "an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling an administration of the bankrupt estate."[3]

Under this jurisdictional framework, the Plaintiff's claim against BOA cannot be considered to be related to the Debtors' bankruptcy. Quite simply, the resolution of the Plaintiff's claim against BOA will have absolutely no impact on the Debtors' bankruptcy estate. A judgment against BOA would be paid by BOA to AFC, not to the Debtors or to the bankruptcy estate. Any judgment would

---

[2] *See In re Dogpatch*, 810 F.2d 782, 786 (8th Cir. 1987).

[3] *Id.*

4

not be paid by the bankruptcy estate. Moreover, the factual determinations on which such a judgment would be based would not alter the Debtors' rights, liabilities, options, or freedom of action, although those determinations would likely be pertinent to the Plaintiff's claims against the Debtors, inasmuch as the facts underlying all of the Plaintiff's claims are entwined.

AFC argues that it is precisely this "entwinement" of facts that confers jurisdiction on the Court. According to AFC, the claims against the Debtors cannot be resolved without the presence of BOA as a co-defendant, and, moreover, the judicial efficiency gained by trying the claims against the Debtors and BOA together favors the exercise of jurisdiction. AFC directs the Court's attention to the decision by the Eighth Circuit Court of Appeals in *Abramowitz v. Palmer*[4] to support these arguments.

The Court finds no merit in AFC's arguments and disagrees with its interpretation of *Abramowitz*.

First, contrary to AFC's contention, its claims against the Debtors can, indeed, be resolved without BOA as a *co-defendant.* The Court does not doubt that AFC cannot prosecute its claim against the Debtors without propounding discovery on BOA or calling BOA witnesses to testify at the trial, but all of that can be done without making BOA a defendant.

Second, judicial efficiency alone cannot confer jurisdiction on a court,[5] and the Plaintiff has not demonstrated that the outcome of its claim against BOA will have an effect on the estate.

Finally, despite the similarity on the surface of *Abramowitz* to this case, in that both involve the bankruptcy court's exercise of jurisdiction over a non-debtor co-defendant where the facts underlying fraud claims against the co-defendants are intricately entwined, the resolution of the claim against the non-debtor in *Abramowtiz* had a concrete legal effect on the estate, an effect which is absent here.

*Abramowitz* involved a suit against a debtor and his wife (a non-debtor) for fraud arising from the sale of the debtor's dental practice to the plaintiff, Dr. Abramowtiz. In addition to money damages against each of the defendants, the plaintiff sought to impose a constructive trust on the defendants' home allegedly purchased with proceeds from the sale. The bankruptcy court found that

---

[4] 999 F.2d 1274 (8th Cir. 1993).

[5] *Id.* at 1279 n.3 (citing *In the Matter of Lemco Gypsum*, 910 F.2d 784 (11th Cir. 1990)).

both defendants had committed fraud, imposed a constructive trust on their home, and entered a money judgment against both defendants. On appeal, the debtor's wife ("Mrs. Palmer") argued, *inter alia*, that the claims against her, a non-debtor, were non-core matters unrelated to the debtor's bankruptcy proceeding.

Using the same definition of "related to" jurisdiction as the Court uses in this case, the Circuit Court rejected Mrs. Palmer's arguments and found that the bankruptcy court had jurisdiction over the claims against Mrs. Palmer. The basis for the Circuit Court's decision, however, was not, as AFC argues, that the claims against the debtor and non-debtor were so entwined that "related to" jurisdiction existed;[6] rather, the Circuit Court's decision was driven by the need to determine Mrs. Palmer's interest in the home purchased with proceeds from the sale. Mrs. Palmer and her husband held title to the home as tenants by the entireties, and under Missouri law, the home could not be subjected to a constructive trust unless both the debtor and Mrs. Palmer were liable to Mr. Abramowitz.[7] "Without a determination of Ms. Palmer's interest in the home, the bankruptcy court could not fully and fairly adjudicate the rights and liabilities *of the debtor*."[8] Therefore, the Circuit Court concluded, the bankruptcy court properly exercised "related to" jurisdiction over Mr. Abramowitz's state-law fraud claims against Mrs. Palmer, a non-debtor.[9]

For the reasons set out herein, the Court finds that it does not have jurisdiction over the Plaintiff's claim in Count V against BOA.

*Discretionary Abstention*

---

[6] Admittedly, the *Abramowitz* court devoted a fair amount of ink to discussions of judicial economy, but those discussions were in the context of resolving matters "connected to the debtor's estate." *See, e.g, id.* at 1278 (citing *Lemco, supra*) and 1279 n.3.

[7] A creditor may not levy on entireties property when only one of the entirety interest holders is a debtor. *In re Garner*, 952 F.2d 232, 234-35 n. 1 (8th Cir. 1991) (citations omitted).

[8] *Abramowitz*, 999 F.2d at 1278 (emphasis added).

[9] The Circuit Court upheld the bankruptcy court's imposition of money damages against Mrs. Palmer, reasoning that "the small step the bankruptcy court took between determining [Mrs.]Toni Palmer's fraud and entering a money judgment against Toni Palmer as a result of that fraud was a logical exercise of related to jurisdiction given the unusual factual record in this case." *Id*. at 1279.

If it should be determined that the Court has jurisdiction over the Plaintiff's claim against BOA, the Court will abstain under 28 U.S.C. §1334(c)(1) from exercising that jurisdiction.

Section 1334(c)(1) provides, in pertinent part:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11, or arising in or related to a case under title 11.

Because § 1334(c)(1) does not delineate specific criteria to consider in determining whether to abstain, courts generally look to the "well-developed notions of judicial abstention when applying section 1334(c)(1)."[10] These well-developed notions include consideration of the following factors:[11]

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficult or unsettled nature of the applicable law;

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the degree of relatedness to the main bankruptcy proceeding;

(6) the burden on the bankruptcy court's docket;

(7) the likelihood that one of the parties is forum shopping;

(8) the presence or necessity in the proceeding of non-debtor parties;

(9) the existence of a jurisdictional basis other than 28 U.S.C. § 1334;

(10) the existence of a right to a jury trial and whether the parties consent to jury trial in the bankruptcy court;

(11) the financial condition of the parties; and

(12) the case's status as a "related" matter rather than a core proceeding.

---

[10] *Phelps Tool and Die Houston, Inc., et al. v. Welsh, et al.* (*In re Phelps Technologies, Inc.*), 238 B.R. 819, 823 (Bankr. W.D. Mo. 1999).

[11] *See In re Williams,* 256 B.R. 885, 893-94 (B.A.P. 8th Cir. 2001) (citing *In re Phelps Technologies, Inc.*, 238 B.R. at 821 (Bankr. W.D. Mo.1999)).

The application of these factors is not a mechanical exercise. Courts apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative.

In this case, the Court finds that abstention is warranted based on factors one, two, five, and twelve. Factors one, five, and twelve weigh in favor of abstention for the reasons explicated above – resolution of the Plaintiff's claim against BOA will have no effect on the estate (1), and, therefore the claim is <u>not</u> related to the bankruptcy (5 and 12). Factor two weighs in favor of abstention because state law issues not only predominate the Plaintiff's claim against BOA, they are the *only* issues implicated by that claim. The other factors do not weigh either for or against abstention.

## CONCLUSION

For the reasons stated above, the Court will dismiss the Plaintiff's claim against Bank of America. Alternatively, the Court will abstain from exercising jurisdiction over that claim.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order will be issued pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 28th day of April, 2006.

        /s/ Jerry W. Venters
        HONORABLE JERRY W. VENTERS
        UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Karen M. Gleason
J. Kevin Checkett
Scott A Wissell